Gen. 83] 83

**COUNTIES**

**CHARTER HOME RULE COUNTIES – SHERIFFS – CORRECTIONS – AUTHORITY TO TRANSPORT CORRECTIONAL FACILITY DETAINEES TO HOSPITALS**

January 7, 1994

*The Honorable Neal Potter*
*County Executive*

*The Honorable Marilyn Praisner*
*County Council President*

You have requested our opinion whether Montgomery County has the authority under current law to engage a private contractor to provide transportation services for detainees at the county correctional facility who need treatment at off-site hospitals. The County Attorney has opined that Montgomery County may not do so without new statutory authority from the General Assembly. You also asked whether a private contractor may perform other transportation duties to be performed in a similar manner as the medical transport.

For the reasons given below, it is our opinion that Montgomery County does have authority under current law to engage a private contractor to provide transportation services for detainees at the county correctional facility who need treatment at off-site hospitals. It is likely, however, that other transportation duties may not be provided by anyone other than the sheriff without new authorizing legislation.

**I**

**Allocation of Authority Over Prisoners**

Article IV, § 44 of the Maryland Constitution provides for the election of a sheriff in each county and Baltimore City. In the

absence of a constitutional specification of the duties of the office, a sheriff's "powers and duties are prescribed by the common law as modified by the Acts of the Legislature." *Soper v. Montgomery County*, 294 Md. 331, 337, 449 A.2d 1158 (1982). *See also* 54 *Opinions of the Attorney General* 387, 389-90 (1969). The common law duties included "conserving public peace, preserving public order, preventing and detecting crime, enforcing criminal laws by ... raising a posse and arresting persons who commit crimes in their presence, providing security for courts, serving criminal warrants and other writs and summonses, and *transporting prisoners*." *Soper*, 294 Md. at 336-37 (emphasis added).

The Express Powers Act, Article 25A of the Maryland Code, enumerates the powers of charter home rule counties. Article 25A, §5(C) empowers charter counties "to establish, maintain, regulate and control county jails, and county houses of correction or detention and reformatories, and to regulate all person confined therein." This office has observed that "[t]he language of §5(C) confers on charter counties, in very broad terms, full authority to provide for the operation of county jails and the treatment of prisoners." 71 *Opinions of the Attorney General* 197, 198 (1986). Thus, that opinion concluded, Talbot County, a charter county like Montgomery County, had the legal authority to contract with a private entity for the custody of inmates committed to the county detention facility: "The authority vested by [§5(C)] necessarily includes choosing whether to operate the institution with county employees or through the use of a contractor." 71 *Opinions of the Attorney General* at 201.

Article 87, §48 of the Code also allows charter counties to choose an alternate prison custodian in lieu of the county sheriff. Specifically, Article 87, §48 provides as follows:

> Where a county has adopted a charter under Article XI-A of the Constitution of Maryland, the county council of the county by resolution, ordinance or local law may provide for the appointment of a qualified person as jailor or warden of the county jail, together with qualified assistants necessary to perform the duties of the office. A jailor or warden appointed shall be responsible for the safekeeping, care and feeding of all prisoners

> in the jail from the time they are committed (and while working on the public highways and going to and from that work) until they are discharged, released or withdrawn from jail by the sheriff, or under court order, or other authority. These provisions do not affect the powers and duties of the sheriff of the county in respect to safekeeping and custody of all prisoners, except when the prisoners are in jail, or working on the public highways or going to and from work.

In accordance with Article 87, §48, Montgomery County has chosen to vest the responsibility for the care of its prisoners in an administrative official of the county. The Director of the Department of Correction and Rehabilitation is responsible for "the safekeeping, care and custody of all inmates from the time in which they are lawfully committed to the department of correction and rehabilitation until they are lawfully discharged, released or withdrawn therefrom." §13-1(d) of the Montgomery County Code. Thus, the duties of the sheriff with respect to prisoner care and custody have been conferred on the Director of the Department of Correction and Rehabilitation. *See Polk v. Montgomery County,* 548 F. Supp. 613, 616 (D. Md. 1982) (holding that, "[s]ince Montgomery County has transferred control of prisoners detained at county detention facilities from the sheriff to the director of the Department of Correction and Rehabilitation," there was no basis for a complaint against the sheriff for harm suffered by a prisoner while incarcerated).

## II

### Transportation of Prisoners

Traditionally, the duty of transporting prisoners has been that of the sheriff. *Soper v. Montgomery County,* 294 Md. at 336. This duty existed because the sheriff had the full responsibility for those detained within the sheriff's county. 60 *Opinions of the Attorney General* 647, 654-55 (1975). In other words, "under the common law the sheriff was ex officio jailor, and that by virtue of his position as such he was the official custodian and in charge of all persons confined therein." 60 *Opinions of the Attorney General* at 653

(internal quotations omitted). In that opinion, Attorney General Burch concluded that it was "the duty of the Sheriff of Washington County to transport prisoners committed to his custody to and from the District Court to the Washington County Jail whenever a mandate contained in a writ or order required him to produce the prisoner in the District Court." 60 *Opinions of the Attorney General* at 655.

In our view, the duty to transport a prisoner to an off-site hospital differs from the duty to transport a prisoner to and from the courtroom discussed in that opinion. As we see it, hospital transportation is an aspect of custodial care that remains with the sheriff in counties where the sheriff is jailor, but not in counties where that duty has been transferred pursuant to statute.

The State has a responsibility to provide medical care for those whom it incarcerates. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); 65 *Opinions of the Attorney General* 83, 85 (1980). By statute, the General Assembly has made medical care the direct responsibility of the officer in charge of the detention center, whether the sheriff or a county official − in this case, the Director of the Department of Correction and Rehabilitation. Article 87, §46 provides as follows:

> (a) In this section, "sheriff" includes the administrator, director, superintendent, warden, or other officer in charge of a detention center.
>
> (b) The sheriff shall provide food and board for all prisoners committed to the sheriff's charge and such food and other articles for the comfort of sick prisoners as the physician attending the prisoners may deem necessary, the expense of which shall be paid by the county or Baltimore City.

*See also* Article 87, §45.

In an earlier opinion, this office opined that the Sheriff of Calvert County had a duty to accept custody of injured, sick, or intoxicated prisoners in need of medical attention. 58 *Opinions of the Attorney General* 647 (1973). This duty, Attorney General Burch

wrote, was based upon the sheriff's role as custodian of the prisoners confined in his custody:

> It is just as much a part of the sheriff's duty to look out for and protect the health, and preserve the lives of the prisoners as it is to detain them in prison.
>
> . . .
>
> Consequently, not only must the sheriff accept responsibility for all prisoners lawfully committed to his custody, but also *he, himself must furnish those who are injured, sick ... and in need of hospital attention with whatever medical and surgical aid they require.* Part of that common law responsibility is recognized specifically in Section 46 of Article 87 of the Code ....

58 *Opinions of the Attorney General* at 648-49 (emphasis added). The Attorney General elaborated:

> Since ... it is the common law duty of the sheriff ... that he himself safely keep all prisoners lawfully committed to his custody until discharged by law, it follows that said duty remains even though the prisoner may have to be kept away or removed from the county jail. It has been recognized that, under the circumstances necessity may render it proper for the sheriff to detain his prisoner in some place other than the county jail. Detention of a prisoner in a place other than the county jail, nevertheless, does not remove the prisoner from the sheriff's custody and care. In cases here it is necessary that a prisoner be confined in a hospital, rather than in the jail, the sheriff's duty to keep him safely until discharged by law remain the same.

58 *Opinions of the Attorney General* at 649-50.

The Court of Appeals, referring with approval to this 1973 opinion, held that because the Harford County Sheriff was designated as custodian of persons who were arrested and charged

with a crime prior to trial, the county was responsible for furnishing medical care to an indigent person who was hurt resisting arrest. *Harford County v. Univ. of Maryland Med. System*, 318 Md. 525, 530, 569 A.2d 649 (1990). *See generally* 60 Am. Jur. 2d *Penal and Correctional Institutions* §22, at 1140 (1987) ("[t]he standard of care owed by a law enforcement officer to a prisoner placed in his or her care and custody is to keep the prisoner safe and free from harm [and] to *render him medical aid when necessary* ...." (emphasis added)).

Thus, by virtue of his or her position, the custodian of the prison or jail has the duty to provide for the health of the prisoners, and this duty includes, if necessary, providing transportation to an off-site medical treatment facility. *See also* Article 27, §698 (authorizing the officer in charge of a penal institution temporarily to remove a sick prisoner to a place for adequate treatment). Transporting a prisoner to an off-site hospital is ancillary to the duty to care for the prisoner. Because that duty in Montgomery County is vested in the Director of the Department of Correction and Rehabilitation, the Director must provide for needed hospital transportation.

Further, the County may contract for a private entity to provide the transportation service. *See* 71 *Opinions of the Attorney General* at 201. Under §13-1(e) of the County Code, the Director has "authority to transfer custody of inmates to authorized personnel for transportation to ..., hospitals, physicians for medical consultations, dentists for dental care, ... and other locations necessary for appointments for the health ... of the inmate ...."

In the letter requesting this opinion, you also stated that the contract with the private entity would provide for other duties regarding prisoner transport, to be handled similarly to the medical transport. You do not specify which other transportation duties would be handled by the private contractor. To the extent that transportation to an off-site facility other than a hospital or medical facility is not ancillary to the duty to provide for the care of the prisoner, the provision of such transportation by the County or its contractor would require the enactment of statutory authority. *See, e.g.,* Article 87, §26(b) and 48(b) of the Code (grant of authority to Anne Arundel County).

### III

### Conclusion

In summary, it is our opinion that Montgomery County has authority under the current law to engage a private contractor to provide transportation services for detainees at the county correctional facility who need treatment at off-site hospitals. General prisoner transport authority, however, would require new legislation.

J. Joseph Curran, Jr.
*Attorney General*

Kimberly Smith Ward
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*